UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In Re:

Kyle E. Norton,                                   Case No.: 8-17-70855-ast
dba Norton Law Group LLC
dba The Law Offices of Kyle Norton PC             Chapter 7

          Debtor.
-------------------------------------------------------X
Juan A Viles, Dianna Burkeen, Gary
Burkeen, Danielle D'andrea, Frank
D'andrea, Pamela Kelly, Timothy Kelly,

        Plaintiffs        Adv. Proc.: 8-17-08125-ast

   -vs-

Kyle E. Norton

        Defendant.
-------------------------------------------------------X

## **ORDER GRANTING PLAINTIFFS MOTION FOR SUMMARY JUDGMENT**

*Procedural history*

On February 15, 2017 (the "Petition Date"), Kyle E. Norton (the "Debtor" or "Defendant") commenced his Chapter 7 case by filing a voluntary petition for relief under Chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

On April 21, 2017, the above caption plaintiffs (the "Plaintiffs") filed a Complaint against Debtor. [dkt no. 1] That same day, Plaintiffs' also filed a declaration of Eli H. Vonnegut in support of Plaintiffs' Complaint. [dkt item 2]

On May 24, 2017, Defendant filed an answer to the Complaint. [dkt item 9]

1

On August 10, 2017, Plaintiffs filed a motion for judgment on the pleadings (the "MJP"). [dkt item 11]

On September 6, 2017, Defendant filed an affidavit in opposition. [dkt item 14]

On March 12, 2019, the Court held a hearing and determined that the MJP should be converted to a motion for summary judgment.

By Order entered April 5, 2019 [dkt item 22], the Court converted the MJP to a motion for summary judgment and set specific deadlines related thereto.

On April 22, 2019, Plaintiffs timely filed their Rule 7056 Statement. [dkt item 23]

Defendant did not file any further pleadings.

*Claims and litigation background*

*The State Court Action*

Plaintiffs had filed suit in 2014 in New York Supreme Court in Nassau County (the "State Court") against Kyle Norton, Norton Law Group, and the Law Offices of Kyle Norton Aviles, under No. 10882/2012 (the "State Court Action"). Plaintiffs alleged common law fraud and other causes of action in connection with a loan modification scam principally designed and carried out by Norton. More specifically, Plaintiffs alleged they are low income/middle income New York homeowners who suffered financial hardship and fell behind on mortgage payments, and that when they sought help, they became victims of false advertising and a fraudulent loan modification scheme run by Norton. The scheme included Norton advertising his services and extremely high success rates; he charged a fixed up-front fee between $2,500-$5,000 and often told plaintiffs that he anticipated his fees would end up totaling less. Upon signing up with Norton, Plaintiffs were prohibited under their retainer agreements from speaking with their lenders. Once Norton received Plaintiffs' fees, he ceased communications with them. In most cases, Norton never communicated

with the lenders either, but still badgered plaintiffs for additional fees approaching double the amounts initially charged.

In 2011, the NY Attorney Grievance Committee for the 10th Judicial District officially admonished Norton Law Group.

On January 31, 2013, after Defendant failed to comply with document requests, Plaintiffs filed a motion to compel.

On June 18, 2013, Defendant produced certain documents, but withheld other documents responsive to the documents request.

On January 28, 2014, following Defendant's failure to produce documents responsive to the documents request, Plaintiffs moved to compel their production.

On February 26, 2014, the State Court entered an order granting Plaintiffs' motion and compelling Defendants to produce the requested documents (the "Order to Compel").

Following Defendants failure to comply with the Order to Compel, on August 15, 2014 the State Court entered a decision striking their answer and granting judgment in favor of Plaintiffs. On May 4, 2015, the State Court entered judgment awarding damages in favor of each of the Plaintiffs, aggregating $204,100.63 (the "Judgment"). Collection efforts on the Judgment ceased when Norton filed this bankruptcy.

*This Adversary Proceeding*

In their Complaint, Plaintiffs request this Court determine that the damages awarded to them in the Judgment are nondischargeable under Section 523(a)(2) for actual fraud and false representations, and under Section 523(a)(4) for fraud while acting in fiduciary capacity as an attorney.

Through the MJP as converted to a motion for summary judgment, Plaintiffs assert that they should prevail as a matter of law based upon collateral estoppel and/or res judicata. Their request is support by the April 21, 2017 Declaration of Eli J. Vonnegut [dkt item 2], to which are attached various exhibits from the State Court Action:

- o   Exhibit A - Verified Complaint (detailing fraud against each plaintiff)
- o   Exhibit B - Decision and Order (granting judgment for plaintiffs)
- o   Exhibit C – Judgment
- o   Exhibit D – Answer (just denied all allegations in the complaint)
- o   Exhibit E – 2012 Document Requests
- o   Exhibit F – Document Production Order
- o   Exhibit G - Motion to Strike (strike defendants answer)
- o   Exhibit H – Non-party subpoena
- o   Exhibit I – Judgment-debtor subpoena
- o   Exhibit J – Motion to Compel (compliance with subpoenas)
- o   Exhibit K – Order to Compel
- o   Exhibit L - Contempt Order
- o   Exhibit M – Scheduling Stip
- o   Exhibit N – Norton 2016 Email Thread
- o   Exhibit O – Norton 2017 Email Thread
- o   Exhibit P – Affirmation of Adam G Mehes

Norton has not filed any controverting evidence.

*Jurisdiction and Venue*

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (I) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

*Findings of Fact and Conclusions of Law*

The Court is not required to state findings of fact and conclusions of law when ruling on summary judgment motions, pursuant to FRCP 52(a)(3), as incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

*A. The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is

5

not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (internal citations omitted).

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995); *Burrell v. City Univ. of New York,* 894 F. Supp. 750, 757 (S.D.N.Y. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001); *see Burrell*, 894 F. Supp. at 758 (citing *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)).

*B. Collateral Estoppel (Issue Preclusion)*

It is well settled that a party may invoke the common law doctrines of collateral estoppel (issue preclusion) and res judicata (claim preclusion) to preclude another party from relitigating claims and issues that have already been decided in prior litigation. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in the first action). Bankruptcy courts may apply issue preclusion in non-dischargeability litigation. *Grogan v. Garner*, 498 U.S. 279, 284 (1991) ("If the preponderance standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior

action."); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006); *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

In addition to federal courts being asked to give preclusive effect to each other's judgments, federal courts are often called upon to give preclusive effect to judgments of the state courts, and vice versa. *Grogan*, 456 U.S. at 284-86; *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so…." quoting *Allen,* 449 U.S. at 96); *see also* U.S. CONST. art. IV, § 1 (Full Faith and Credit Clause); 28 U.S.C. § 1738 (1982).

Because Norton's liability was decided under state law, this Court will apply New York's rules of preclusion and will not engage in a separate analysis under the federal standards. *See De Curtis v. Ferrandina* (*In re Ferrandina*), 533 B.R. 11 (Bankr. E.D.N.Y. 2015).

In *Evans*, the Second Circuit addressed a substantially similar issue: whether chapter 7 debtors in a nondischargeability action should be permitted to relitigate their liability for fraud determined under a prepetition New York state default judgment. 469 F.3d at 280. The *Evans* debtors were properly served with a state court complaint which alleged fraud, failed to respond to that complaint, and failed to appear for the subsequent inquest at which the plaintiff offered evidence of the debtors' fraud; however, the *Evans* debtors failed to contest the state court's default fraud judgment before filing for bankruptcy. *Id.* at 282. The *Evans* court held that collateral estoppel should be applied because the debtors were previously afforded a full and fair opportunity to litigate the issue of fraud and because the state court necessarily decided the issue. *Id.* at 282-83.

More recently, the Second Circuit addressed collateral estoppel in the context of a federal court default judgment entered as a sanction against an appearing party. *Murphy v. Snyder* (*In re Snyder*), 939 F.3d 92 (2d Cir. 2019). The circuit court noted that "A party seeking to invoke collateral estoppel must establish that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball*, 451 F.3d at 69 (internal quotation marks omitted). The court then turned to the requirement that the underlying issue be "actually litigated," noting that standard "generally bars a court from giving a default judgment preclusive effect. *See*, *e.g.*, *Abrams v. Interco Inc.*, 719 F.2d 23, 33 n.9 (2d Cir. 1983) (observing that the "accepted view" is "that the decision of issues not actually litigated, e.g., a default judgment, has no preclusive effect in other litigation")." The Second Circuit then stated:

> We join several other circuits in recognizing an exception to that rule: where the default judgment is entered as a sanction for bad conduct, and the party being estopped had the opportunity to participate in the underlying litigation, the default judgment has preclusive effect when determining the nondischargeability of a debt in a bankruptcy proceeding. [citation omitted].
>
> Affording a default judgment entered as a sanction preclusive effect furthers the goal of imposing the sanction in the first instance because it deprives the sanctioned party an opportunity to relitigate an issue that could and should have been decided in the first litigation.

*Snyder*, 939 F.3d at 101-102. This Court had reached a similar conclusion in *Ferrandina*, given the substantial participation of the debtor there in the pre-petition federal district court litigation.

Norton has provided no basis for this Court to deviate from this standard as enunciated by the Second Circuit in *Snyder*, nor argued that a different outcome would result from applying New York law. For the reasons to follow, this Court has determined that issue preclusion should be applied.

*Applicability of issue preclusion to the State Court Judgment*

### 1. *Identity of Issues*

The first issue the Court must decide is whether Plaintiffs' § 523(a)(2) claim for fraud in connection with the loan modification scam was necessarily decided in the State Court Action. *See Evans*, 469 F.3d at 282 ("[F]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." (quoting *D'Arata*, 76 N.Y.2d at 667)). Section 523(a)(2)(A) provides that a debt is nondischargeable under circumstances where the debt is, "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). *See Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 194 L. Ed. 2d 655 (2016). False pretenses, false representation, and actual fraud represent three different concepts, and thus are treated as three separate causes of action. *In re Crossfield*, 2012 WL 3637919, at *3 (Bankr. E.D.N.Y. Aug. 22, 2012); *In re Hambley*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).

Courts in this circuit have found the elements of common law fraud to be "virtually identical" to the elements of § 523(a)(2). *See, e.g.*, *In re Ottimo*, 2017 WL 2470861, at *4; *In re Adamo*, 560 B.R. 642, 648 (Bankr. E.D.N.Y. 2016); *In re Ippolito*, No. 12-70632-AST, 2013 WL 828316, at *5 (Bankr. E.D.N.Y. Mar. 6, 2013). Thus, to determine whether there is an identity of issues, this Court must closely analyze the allegations raised by Plaintiffs in the State Court Action and the elements of § 523(a)(2).

Incident to their fraud claim, Plaintiffs' State Court complaint alleged, among other things, that Debtor (i) represented that he was negotiating with Plaintiffs' lenders and performing work

for Plaintiffs, when he performed little to no work regarding Plaintiffs' issues; and (ii) made specific representations to Plaintiffs identifying certain programs that they would qualify for and certain results that he could deliver within certain periods of time, which ended up being false. Plaintiffs' State Court complaint included an express cause of action for common law fraud in which Plaintiffs asserted that Debtor (i) "made intentional misrepresentations and/or failed to provide material information"; (ii) "made these representations and omissions knowing that they were false at the time they were made"; (iii) "offered these statements as fact, not opinion, with the intent to induce Plaintiffs to purchase their loan modification services, to convince Plaintiffs to remain as clients, or to prevent Plaintiffs from learning the true nature of Defendants'' scheme"; (iv) Plaintiffs "had a reasonable right to rely and in fact relied" on the Debtors' claims; and (v) "Plaintiffs suffered damages as a direct and proximate result of their reasonable and justified reliance on the Debtors' intentional misrepresentations and failures to disclose."  Thus, the fraud claim as alleged in Plaintiffs' State Court complaint bear a close identity of issues with Plaintiffs' § 523(a)(2) fraud claim here.

Because this Court did not find a claim plead in the State Court Action that was bore an identity to a § 523(a)(2) false pretenses claim, it will not analyze the false pretenses claim for issue preclusion purposes.

### 2. *Actually litigated issue and decided in the prior action*

The next issue is whether the underlying fraud claim was actually ligated, and decided in State Court.  As noted above, where the default judgment is entered as a sanction for bad conduct, and the party being estopped had the opportunity to participate in the underlying litigation, courts can give preclusive effect to a post-answer default judgment.

Here, the Judgment was entered as a result of Debtor repeatedly failing to comply with Plaintiffs' discovery requests by withholding responsive documents for nearly a year, and failing to comply with the Order to Compel, thus, qualifying as bad conduct. Further, Debtor had the opportunity to participate in the underlying litigation by complying with the discovery requests. Given the Judgement was entered as a sanction for bad conduct, and Debtor having had the opportunity to participate in the underlying litigation, the Court finds the underlying issue was actually litigated and decided in the State Court Action.

### 3. *Full and fair opportunity to litigate*

The Court must next determine whether Debtor had a full and fair opportunity to litigate the fraud claim. The record of the proceedings in State Court detailed above leading up to the filing of this bankruptcy demonstrate that he did.

On August 24, 2012, Debtor was properly served with a state court complaint alleging, *inter alia*, fraud. Debtor answered the complaint on October 19, 2012. Despite answering the complaint, Debtor failed to comply with Plaintiffs' discovery and the Order to Compel, resulting in the State Court striking Debtors' answer and granting Judgment in favor of plaintiffs on May 4, 2015. Debtor failed to seek to set aside or appeal the Judgment for nearly 2 years prior to filing for bankruptcy on February 15, 2017.

As such, Debtor was afforded a full and fair opportunity to litigate his liability for fraud, and he should not be allowed to relitigate his liability here.

### 4. *Resolution of the issue was necessary to support a valid and final judgment on the merits*

The final requirement is whether the resolution of the issue was necessary to support a valid and final judgment on the merits. Here, the State Court's resolution of the properly plead fraud claim was necessary to the Judgment it entered; thus, collateral estoppel should be applied.

11

*Nondischargeability under 523(a)(2)*

As noted above, the state law fraud claim and the § 523(a)(2) actual fraud claim are essentially the same and therefore collateral estoppel should apply. As such the liability established under the Judgment is nondischargeable.

*Nondischargeability under 523(a)(4)*

As this Court has determined that the liability established under the Judgment is nondischargeable under § 523(a)(2), there is no need to address Plaintiffs § 523(a)(4) claim.

Based on the foregoing, it is hereby

**ORDERED**, that the motion for summary judgment is granted; and it is further

**ORDERED**, that liability established under the Judgment in favor of each Plaintiff under the Judgment is nondischargeable; and it is further

**ORDERED**, that a Final Judgment hereon shall issue.



**Dated: January 14, 2020**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**